UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DENISE L. DAWSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:10-cv-1167-WTL-TAB |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ENTRY ON JUDICIAL REVIEW

Pursuant to 42 U.S.C. § 405(g), Plaintiff Denise L. Dawson seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

## PROCEDURAL BACKGROUND

Dawson initially applied for SSI and DIB on May 4, 2006, alleging that she became disabled on September 1, 2003, due to a learning disability, depression, memory problems, and asthma. Her application was initially denied in October 2006 and upon reconsideration in February 2007. She then requested a hearing before an Administrative Law Judge ("ALJ"). On June 9, 2009, a hearing was held before ALJ Gill, at which Dawson was represented by counsel. Her application was denied. The Appeals Council denied her request for review in July 2010, and Dawson filed this timely appeal.

## MEDICAL HISTORY

Dawson alleges she is disabled because of a learning disability, depression, memory problems, and asthma. The medical evidence of record includes two different psychological evaluations. The first, performed by Dr. Grover in 1996, diagnosed Dawson with mild dysthymia and borderline intellectual functioning. She had a verbal IQ of 73, a performance IQ of 79, and a full scale IQ of 75. The second, performed by Dr. Henry in 2006, diagnosed her with depressive disorder, not otherwise specified, and mild mental retardation. She had a verbal IQ of 69, a performance IQ of 75 and a full scale IQ of 69. At this examination, a memory test was given and Dawson was able to recall four out of four objects immediately and three out of four objects after five minutes elapsed.

Other medical evidence include 2007 X-rays taken at the Meridian Chiropractic Clinic that showed Dawson has mild scoliosis. A 2006 exam performed by Dr. Khan showed her lungs to be "clear to auscultation bilaterally without crackles, rhonchi or weezing" and her spine to be "of normal contour and has full range of motion." Record at 582-583. In May, 2006, Dawson went to Wishard Hospital due to a "thick congested cough." *Id.* at 496. The evidence indicates she had an acute asthma exacerbation; however, after receiving an Albuterol nebulizer treatment, she showed improvements. Additional medical information will be discussed below as necessary.

## APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must

demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## THE ALJ'S DECISION

Applying the five-step analysis, the ALJ found at step one that Dawson had not engaged in substantial gainful activity since her alleged onset date of September 1, 2003. At step two, the ALJ determined that Dawson had the following severe impairments: asthma, a depressive disorder, and borderline intellectual functioning. At step three, the ALJ determined that Dawson did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then found that Dawson had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift, carry, push and pull up to 20 pounds occasionally, 10 pounds frequently, stand for 6 hours in an 8 hour workday, walk for 6 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday. However, the claimant is unable to perform work that requires any climbing of ladders, ropes and scaffolds nor that which includes anything more than concentrated exposure to unprotected heights and moving machinery. The claimant is moderately limited in her abilities to: understand and remember detailed instructions; carry out detailed

instructions; and make simple work related decisions.

Record at 18. The ALJ determined at step four that Dawson was unable to perform any past relevant work. Finally, at step five, the ALJ concluded that, considering Dawson's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Dawson could perform work as a maid, packager/hand packager, or janitor.

## DISCUSSION

Dawson advances several objections to the ALJ's decision, each of which is addressed below.

### *The ALJ's Bias*

Dawson first alleges that the ALJ was biased against her attorney. She states that the ALJ mentioned her attorney by name 23 times in his opinion denying her claim and states that the ALJ "perhaps would have found in favor of her claim if she had been represented by a different attorney." Pl.'s Brief at 11. The Seventh Circuit has held that it begins with the presumption that the ALJ is unbiased and only after the claimant has shown that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible" is that presumption rebutted. *Keith v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007) (quoting *Liteky v. United States,* 510 U.S. 540, 556 (1994)).

The Defendant does not offer a reason for the references but argues that they do not rise to the level necessary to show bias on the part of the ALJ. The Court agrees. The fact that the ALJ mentioned Dawson's attorney by name 23 times does not establish bias. Nor does the Court believe Dawson would have had a different result had she been represented by a different

attorney. This conclusion is further supported by the fact that the ALJ in this case was not local and presided over the hearing in Virginia at the National Hearing Center and thus likely had no history with Dawson's attorney. Accordingly, the Court rejects this argument.

### *Substantial Evidence Fails to Support the ALJ's Step Three Determination*

Dawson next argues that substantial evidence fails to support the ALJ's step three decision that she was not disabled because she did not meet or medically equal the requirements of Listing 12.05C.

Listing 12.05C requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Paragraph C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." This requirement that onset be during the developmental period is "to limit coverage to an innate condition rather than a condition resulting from a disease or accident in adulthood." *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007) (citing *Brown v. Sec'y of Health & Human Servs.,* 948 F.2d 268, 271 (6th Cir.1991)).

Dawson argues that she showed deficits in adaptive functioning before age 22 as evidenced by her enrollment in special education classes, inability to purchase groceries, inability to cook, and inability to handle money. In support of her argument, Dawson relies on two unreported decisions from this Court. The first, *King v. Barnhardt*, No. 1:06-cv-0381-DFH-TAB, 2007 WL 968746 (S.D. Ind. Feb. 26, 2007), involved a claimant who was deemed to have deficits in adaptive functioning manifested before age 22 based on his inability to manage funds

independently and his enrollment in special education classes through the twelfth grade. The second, *Hendricks v. Astrue*, No. 1:08-cv-0376-DFH-TAB, 2009 WL 648610 (S.D. Ind. Mar. 11, 2009), again involved a claimant who was found to have deficits in adaptive functioning manifested before age 22 because of his enrollment in special education classes and his difficulties getting along with others and responding to criticism.

Dawson had a valid IQ test administered when she was 22 and none of the results fell within the range required by Listing 12.05C. This is distinguished from the plaintiffs in *Hendricks* and *King* who did not have IQ tests administered until they were older than 22, and whose first IQ tests fell into the range needed for Listing 12.05.

Moreover, the deficits in adaptive functioning the Plaintiff refers to are her own statements made during her evaluations. As discussed in more detail below, the record contains other evidence that contradicts these statements. Specifically, there is evidence that the Plaintiff sometimes shops alone, that she does cook simple food, and that she is able to pay her bills and count change. The ALJ, recognizing these inconsistencies and the fact that Dr. Grover's report was conducted when she was 22, chose to rely on Dr. Grover's observations of her adaptive functioning before age 22. This was not erroneous.

Finally, as the Defendant notes, the ALJ relied on medical opinions finding the Plaintiff's impairments did not meet or medically equal Listing 12.05C. These opinions were made after reviewing both Dr. Grover's and Dr. Henry's evaluations. The Court, therefore, finds that there is substantial evidence to support the ALJ's step three determination that the Plaintiff's impairments did not medically equal or meet Listing 12.05C.

### *The ALJ Arbitrarily Rejected Examination Evidence*

Dawson next argues that the ALJ arbitrarily rejected Dr. Henry's psychological evaluation and that it was error for the ALJ to rely instead on Dr. Grover's psychological evaluation, which was performed ten years earlier for a different claim and used a different IQ test. She argues that the ALJ "chose the earlier evaluation because he believed he could use it to deny the current claim." Pl.'s Brief at 18.

Despite Dawson's arguments to the contrary, the ALJ did explain his reasons for choosing to rely on Dr. Grover's evaluation. First, he noted that Dr. Grover's evaluation was performed when the Plaintiff was 22 and as such, his observations of what the Plaintiff was able to do at that time were "relevant to her level of adaptive functioning during her developmental period." Record at 15. The Plaintiff was born on July 10, 1973, and Dr. Grover's evaluation was performed on February 6, 1996, so the Plaintiff was 22 at the time of the evaluation, not 24 as she alleges in her brief. As such, this evaluation is relevant, especially considering the threshold requirement for Listing 12.05 is some sort of evidence demonstrating onset before the age of 22.

Further, the ALJ chose to rely on the earlier evaluation because "substantial doubt ha[d] been raised regarding the subjective reports the claimant made to Dr. Henry during the consultative examination." Record at 17. As is explained in more detail below, there is substantial evidence that the Plaintiff was inconsistent in her allegations. The Court, therefore, finds that the ALJ did not arbitrarily reject Dr. Henry's evaluation but instead relied on Dr. Grover's evaluation because of the Plaintiff's age at the time it was conducted and the doubt surrounding the Plaintiff's statements to Dr. Henry.

### *The ALJ Failed to Summon a Medical Advisor*

Dawson next asserts the ALJ erred in failing to summon a medical advisor to testify

about whether her combined impairments medically equaled a listed impairment. She argues that "[t]his ALJ cited no evidence but also simply assumed that Denise Dawson's impairments did not medically equal any Listing." Pl.'s Brief at 16. The Seventh Circuit has held that an "ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support *is not readily discernable*." *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2001) (emphasis added).

The medical support in this case was readily discernable and was discussed in depth by the ALJ. The ALJ relied on opinions concluding that Dawson's mental conditions did not meet or medically equal Listing 12.05C. Record at 16; Exh. B5F; Exh. B11F. These opinions accounted for both of Dawson's psychological evaluations. The Plaintiff argues that this evidence from 2006 and 2007 – years before the ALJ's decision in 2009. This argument is not persuasive given that much of the medical evidence in the record is from several years prior to the ALJ's 2009 decision, including Dr. Henry's report which the Plaintiff relies on heavily. The Plaintiff also argues that since the ALJ did not rely on the Disability Determination Transmittal Forms ("Forms") in his opinion, the Government's argument that this was discernable evidence supporting the ALJ's decision is merely a post-hoc rationalization. *See SEC v. Chenery Corp.*, 332 U.S. 194 (1997). Again, this argument is not persuasive in that the doctors who filled out the Forms were the same doctors who filled out the medical opinions that the ALJ relied on in his determination. Accordingly, the Court finds that the ALJ did not err in failing to summon a medical advisor to testify.

### *The ALJ's Credibility Determination*

Dawson next alleges that the ALJ's negative credibility determination should be reversed

9

because it is contrary to Social Security Ruling ("SSR") 96-7p and is patently erroneous. SSR 96-7p states that, "allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." The Plaintiff argues that the ALJ based his negative credibility determination solely on a comparison of Dawson's allegations with the objective medical evidence. She also argues that the ALJ did not consider the seven factors listed in SSR 96-7p to determine the credibility of her statements.

The Court does not agree. While the ALJ admits he relied heavily on Dr. Kahn's findings, the ALJ did not rely solely on this in determining Dawson's credibility. The ALJ discussed Dawson's allegations at length and explained why he found her not credible. First, he noted her inconsistencies when describing the impact her conditions have on her ability to lift weight and her ability to stand. Dawson alleged on her Disability Report (Appeals) that she was only able to lift less than ten pounds; however, on a form completed for the Disability Determination Bureau, she alleged that she can only lift less than five pounds. She told Dr. Khan she can lift up to twenty pounds with each arm. Further, she alleged she can only stand for ten minutes at a time, but told Dr. Khan she could stand for thirty to forty minutes at a time. Thus, the ALJ's finding that Dawson was not credible was not based solely on the medical evidence, but rather also based on these inconsistencies in her reports.

In addition, the ALJ also looked at Dawson's allegations in comparison to what her uncle reported on the third-party function report. Dawson alleged that she cannot walk very well; however, her uncle confirmed she is "ok walking." He also stated that she can cook simple food, pay bills, and count change. Again, this is evidence that the ALJ's credibility determination was

not based solely on a comparison of her allegations to the objective medical evidence as the Plaintiff argues.

Finally, the ALJ compared her allegations to the medical evidence. The record shows that Dr. Henry reported Dawson could walk without difficulty. Dr. Kahn noted her lungs were clear, even though the she alleged she experiences shortness of breath with minimal exertion. While Dawson complained of back, knee, and hand pain, Dr. Kahn reported she was in "no discomfort or pain," and that she had full range of motion of her spine, shoulders, elbows, wrists, knees, hips, and ankles. She also told doctors she did not do illegal drugs even though her test results were positive for cocaine on more than one occasion.

The Court also finds the Plaintiff's argument that the ALJ did not consider the seven factors listed in SSR 96-7p to be without merit. Among those factors listed are: the individual's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; medications the individual takes; and treatment the individual receives. The ALJ did in fact look at a number of these factors. He considered what Dawson did on a daily basis including cooking, laundry, watching TV, and taking care of her children; he discussed her allegations of the location, duration, and intensity of her symptoms; and he noted she received treatment for asthma and received medication for her back pain. Accordingly, the Court finds the ALJ's credibility determination consistent with the requirements of SSR 96-7p and not patently erroneous.

### *Substantial Evidence Fails to Support the ALJ's Step Five Determination*

Finally, Dawson argues that substantial evidence fails to support the ALJ's step five determination that she was not disabled. Specifically, she argues that the RFC omits her asthma,

depressive disorder, and the impairments Dr. Henry found in his assessment.

Dawson argues that in Dr. Henry's report he determined that she had the following limitations that the ALJ did not consider: "inability to cook on a stove, inability to go to the grocery store alone, inability to handle money and the inability to pay bills without assistance." Pl.'s Reply Brief at 9. After reviewing Dr. Henry's report, it appears that most of the functional limitations the Plaintiff is referring to are statements she made herself as each statement is preceded by Dr. Henry's note, "the claimant stated." Record at 520. These notes appear to be recitations of her statements, not objective observations made by Dr. Henry. *See Farrell v. Sullivan*, 878 F.2d 985, 989 (7th Cir. 1989). The only finding Dr. Henry makes is that "the claimant is unable to manage her funds." Record at 523. Further, as previously mentioned, these allegations are contradicted by other evidence showing that Dawson can cook simple foods, sometimes shops without assistance, and can pay her bills and count money.

In regards to her other impairments, the Court does not agree with the Plaintiff that the ALJ failed to consider her asthma and depressive disorder. The ALJ acknowledges that he found "that the claimant's asthma does have more than a minimal affect on her ability to engage in work related activities." Record at 24. However, he goes on to cite three different documents finding her lungs clear and her asthma to be mild and controlled with a prescription. It was not error for the ALJ to rely on these findings when determining the Dawson's RFC.

Similarly, the ALJ did consider Dawson's depressive disorder when determining her RFC, as evidenced by his use of the following 12.04B criteria: restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. After reviewing the record, the ALJ found she had "mild
12

limitations on her activities of daily living" and that "the claimant's mental conditions do not limit her social functioning to any degree." Record at 25. Finally, when considering her limitations of concentration, persistence, and pace, the ALJ noted that "the claimant is moderately limited in her abilities to: understand and remember detailed instructions; carry out detailed instructions; and make simple work related decisions." Record at 24. These findings were included in the RFC and in the hypothetical given to the vocational expert at the Oral Hearing. As the Plaintiff alleges no other error in step five, the Court finds there is substantial evidence to support the ALJ's step five determination.

## **CONCLUSION**

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.

SO ORDERED: 06/29/2011

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.